1   Michael F. Tubach (S.B. #145955)
    mtubach@omm.com
2   Thomas P. Brown (S.B. #182916)
    tbrown@omm.com
3   Julie D. Wood (S.B. #242147)
    jwood@omm.com
4   O'MELVENY & MYERS LLP
    Embarcadero Center West
5   275 Battery Street
    San Francisco, CA  94111-3305
6   Telephone:    (415) 984-8700
    Facsimile:    (415) 984-8701
7
    Richard G. Parker (S.B. #62356)
8   rparker@omm.com
    O'MELVENY & MYERS LLP
9   1625 Eye Street, NW
    Washington, D.C.  20006-4001
10  Telephone:    (202) 383-5300
    Facsimile:    (202) 383-5414
11
    Attorneys for Defendant
12  eBay Inc.

13

14                  UNITED STATES DISTRICT COURT

15               NORTHERN DISTRICT OF CALIFORNIA

16                       SAN JOSE DIVISION

17  IN RE EBAY SELLER ANTITRUST          Case No.  C 07-01882 (JF)
    LITIGATION
18                                       DEFENDANT EBAY INC.'S NOTICE
                                         OF MOTION AND MOTION TO
19                                       DISMISS PLAINTIFFS'
                                         CONSOLIDATED CLASS ACTION
20                                       COMPLAINT; MEMORANDUM OF
                                         POINTS AND AUTHORITIES IN
21                                       SUPPORT THEREOF

22
                                         Hearing Date:  September 14, 2007
23                                       Time:  9:00 a.m.
                                         Judge:  Hon. Jeremy D. Fogel
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................. 1

MEMORANDUM OF POINTS & AUTHORITIES ......................... 1

INTRODUCTION ........................................................................ 1

STATEMENT OF THE CASE ...................................................... 2

    A.    The Parties ................................................................... 2

    B.    PayPal .......................................................................... 2

    C.    Paying for Purchases In eBay's Electronic Marketplace ................... 3

    D.    Plaintiffs' Claims ......................................................... 4

        1.    Monopolization and Attempted Monopolization ................... 4

        2.    Tying ................................................................... 5

        3.    State Law Claims ................................................... 5

LEGAL STANDARD .................................................................. 6

ARGUMENT .............................................................................. 6

I.    Plaintiffs Fail To State A Claim Under Section Two Of The Sherman Act ................................................. 7

    A.    Plaintiffs Fail To Allege Facts Supporting Their Relevant Markets ................................. 7

    B.    Plaintiffs Have Failed Properly To Allege That eBay Acquired Or Maintained Its Market Position By Engaging In Anticompetitive Conduct ......................... 10

        1.    Acquisition of "Strategic Competitors" ................... 12

        2.    eBay's Alleged Anticompetitive Policies ................... 13

        3.    The Marketing Agreements ................................... 14

II.    Plaintiffs Do Not Allege An Illegal Tying Arrangement Under Either Section One Of The Sherman Act Or The Cartwright Act. ................... 15

III.    Plaintiffs Do Not Allege Harm To Consumer Welfare ................... 19

IV.    Plaintiffs Have Not Adequately Alleged Any Predicate Acts That Violate The UCL. ......................... 21

    A.    The Alleged "Unlawful" Acts ................................... 21

    B.    The So-Called "Unfair" Acts ................................... 21

CONCLUSION .......................................................................... 22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bell Atl. Corp. v. Twombly,*
127 S. Ct. 1955 (2007)................................................................. 3, 6, 19

*Big Bear Lodging Ass'n v. Snow Summit, Inc.,*
182 F.3d 1096 (9th Cir. 1999) ......................................................... 8, 10

*Broadcast Music, Inc. v. CBS, Inc.,*
441 U.S. 1 (1979)............................................................................ 20, 21

*Car Carriers, Inc. v. Ford Motor Co.,*
745 F.2d 1101 (7th Cir. 1984) ............................................................. 15

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,*
20 Cal. 4th 163 (1999) ........................................................................ 21

*Chavez v. Whirlpool Corp.,*
93 Cal. App. 4th 363 (2001) .......................................................... 21, 22

*Continental T.V., Inc. v. GTE Sylvania, Inc.,*
433 U.S. 36 (1977)............................................................................... 12

*Dimidowich v. Bell & Howell,*
803 F.2d 1473 (9th Cir. 1986) ............................................................. 19

*Driskill v. Dallas Cowboys Football Club, Inc.,*
498 F.2d 321 (5th Cir. 1974) ............................................................... 16

*Elliott v. United Center,*
126 F.3d 1003 (7th Cir. 1997) ............................................................... 9

*Forsyth v. Humana, Inc.,*
114 F.3d 1467 (9th Cir. 1997) ............................................................... 7

*G.H.I.I. v. MTS, Inc.,*
147 Cal. App. 3d 256 (1983) ............................................................... 19

*Illinois Tool Works Inc. v. Indep. Ink, Inc.,*
126 S. Ct. 1281 (2006)........................................................................ 16

*Int'l Salt Co. v. United States,*
332 U.S. 392 (1947)............................................................................ 18

*J. Allen Ramey, M.D., Inc. v. Pac. Found. of Med. Care,*
999 F. Supp. 1355 (S.D. Cal. 1998) .................................................... 20

*Kypta v. McDonald's Corp.,*
671 F.2d 1282 (11th Cir. 1982) ........................................................... 19

*Mathias v. Daily News, L. P.,*
152 F. Supp. 2d 465 (S.D.N.Y. 2001) ................................................... 8

*McGlinchy v. Shell Chem. Co.,*
845 F.2d 802 (9th Cir. 1988) ................................................................. 8

*Morrison v. Viacom, Inc.,*
66 Cal. App. 4th 534 (1998) ................................................... 10, 16, 18

# TABLE OF AUTHORITIES
## (continued)

Page

*Nat'l Bankcard Corp. v. VISA U.S.A., Inc.,*
779 F.2d 592 (11th Cir. 1986) ............................................................ 20, 21

*Northern Pac. Ry. Co. v. United States,*
356 U.S. 1 (1958) ....................................................................................... 15

*O'Neill v. Coca-Cola Co.,*
669 F. Supp. 217 (N.D. Ill. 1987) ............................................................. 12

*Ove v. Gwinn,*
264 F.3d 817 (9th Cir. 2001) ...................................................................... 6

*Paschall v. Kansas City Star Co.,*
727 F.2d 692 (8th Cir. 1984) (en banc) .................................................... 12

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.,*
124 F.3d 430 (3rd Cir. 1997) ...................................................................... 8

*Rebel Oil Co. v. Atl. Richfield Co.,*
51 F.3d 1421 (9th Cir. 1995) .................................................................... 20

*RLH Indus., Inc. v. SBC Communications, Inc.,*
133 Cal. App. 4th 1277 (2005) ................................................................. 22

*Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Sys., Inc.,*
732 F.2d 1403 (9th Cir. 1984) .................................................................. 19

*Roy B. Taylor Sales, Inc. v. Hollymatic Corp.,*
28 F.3d 1379 (5th Cir. 1994) .................................................................... 17

*Siegel v. Chicken Delight,*
448 F.2d 43 (9th Cir. 1971) ................................................................ 16, 18

*Smith Machinery Co. v. Hesston Corp.,*
878 F.2d 1290 (10th Cir. 1989) ................................................................ 17

*Southern Card & Novelty, Inc. v. Lawson Mardon Label, Inc.,*
138 F.3d 869 (11th Cir. 1998) .................................................................. 17

*Spectrum Sports, Inc. v. McQuillan,*
506 U.S. 447 (1993) .................................................................................. 11

*Stearns Airport Equip. Co. v. FMC Corp.,*
170 F.3d 518 (5th Cir. 1999) .................................................................... 11

*Tanaka v. Univ. of S. Cal.,*
252 F.3d 1059 (9th Cir. 2001) .............................................................. 8, 10

*United Magazine Co. v. Murdoch Magazines Distribution, Inc.,*
146 F. Supp. 2d 385 (S.D.N.Y. 2001) ...................................................... 17

*United States v. Aluminum Co. of Am.,*
148 F.2d 416 (2d Cir. 1945) ....................................................................... 6

*United States v. Brown Univ.,*
5 F.3d 658 (3d Cir. 1993) ......................................................................... 18

*United States v. E.I. du Pont de Nemours & Co.*
351 U.S. 377 (1956) .................................................................................... 8

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Van Buskirk v. Cable News Network, Inc.*,
284 F.3d 977 (9th Cir. 2002) ............................................................. 3

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004) ................................................. 6, 7, 11, 14

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
382 U.S. 172 (1965) ........................................................................ 8

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*,
127 S. Ct. 1069 (2007) ................................................................... 11

### STATUTES

California Business & Professions Code § 16720 ................................... 5, 16

California Business & Professions Code § 16727 ................................... 5, 16

California Business & Professions Code § 17200 ............................. 5, 21, 22

Fed. R. Civ. P. 8(a) .................................................................................. 6

### OTHER AUTHORITIES

Benjamin N. Cardozo, *Mr. Justice Holmes*, 44 Harv. L. Rev. 682 (1931) ..................... 15

David S. Evans, *The Antitrust Economics of Multi-Sided Platform Markets*,
20 Yale J. on Reg. 352 (2003) ............................................................... 21

Department of Justice and Federal Trade Commission, *Antitrust Guidelines
for the Licensing of Intellectual Property* (Apr. 6, 1995) ............................. 16

Timothy J. Muris, *Payment Card Regulation and the (Mis)Application of the
Economics of Two-Sided Markets*, 2005 Colum. Bus. L. Rev. 515 (2005) ................. 20

# NOTICE OF MOTION

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on September 14, 2007 at 9:00 a.m., or as soon thereafter as counsel may be heard on this matter, in the above-captioned Court, at 280 South 1st Street, San Jose, CA, 95113, in Judge Jeremy Fogel's courtroom, Defendant eBay Inc. will and hereby does move the Court to dismiss Plaintiffs' consolidated class action complaint. This motion is brought on the grounds that Plaintiffs have failed to state a claim on which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, they have not (1) alleged facts to properly plead a relevant market which is a necessary predicate to all their antitrust claims; (2) identified any exclusionary or anticompetitive conduct sufficient to support their claims for monopolization or attempted monopolization; (3) alleged facts necessary to support the conclusion that the practices labeled as a "tying" arrangement pose a threat to competition under either the Sherman Act or the Cartwright Act; or (4) alleged facts that would, if proved, establish the harm to consumers necessary to support any antitrust claim.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the Declaration of Thomas P. Brown and the exhibit thereto, the argument of counsel, and any other matters properly considered by the Court at the hearing on this motion.

Dated:  June 8, 2007

MICHAEL F. TUBACH
THOMAS P. BROWN
JULIE D. WOOD
O'MELVENY & MYERS LLP


By: /s/Thomas P. Brown
Thomas P. Brown
Attorneys for Defendant
eBay Inc.

EBAY'S NTC. OF MOTION AND MOTION TO DISMISS
CASE # C 07-01882 (JF)

# MEMORANDUM OF POINTS & AUTHORITIES

## INTRODUCTION

Every day millions of people visit eBay.com to buy and sell almost anything imaginable. This case is about how eBay's customers pay for the items they buy. Like every merchant from Costco to Neiman Marcus to Walmart, eBay recognizes that all forms of payment are not created equal. Payment methods vary widely in terms of convenience, security, and anonymity. Companies exercise their own judgment as to what payment methods are best for their customers and their business. Like other marketplaces and merchants, eBay allows its users wide discretion in deciding what forms of payment to use, but it does set some limits. Some of those limits relate to eBay's proprietary payment system, PayPal.

According to Plaintiffs, eBay has violated the Sherman Act and California law by exercising its business judgment regarding how people pay for their purchases at eBay.com. Specifically, Plaintiffs accuse eBay of "monopolizing" what they characterize as the "market" for either online auctions or person-to-person online payment systems. They also claim that the antitrust laws somehow allow them to dictate how buyers on eBay use PayPal—*i.e.*, saying "Yes" to PayPal transactions funded by withdrawals from bank accounts but "No" to transactions funded by a credit card. If Plaintiffs were correct, every merchant who could be accused of having "monopoly power" would run the risk of violating the law simply by deciding what forms of payment to accept at its cash registers. Fortunately, neither the Sherman Act nor California law says any such thing.

Plaintiffs have a simple gripe. They object to the prices they pay to use the eBay marketplace, particularly the price they pay to have PayPal process their transactions. Recognizing that they cannot use antitrust law to attack those prices directly, they have pulled together a kitchen-sink complaint that criticizes conduct stretching back more than a decade. Fundamentally, they base their claim on eBay's acquisition and progressive integration of the PayPal payment system into eBay.com. These allegations cannot support an antitrust claim for the same reasons that led the Department of Justice

EBAY'S NTC. OF MOTION AND MOTION TO DISMISS
CASE # C 07-01882 (JF)

1    to approve the transaction in the first place. The antitrust laws exist to protect consumer

2    welfare. eBay has made consumers better off by integrating PayPal into its marketplace

3    and giving consumers the right to choose how to fund their PayPal payments. Plaintiffs

4    have not alleged facts that, even were they true, suggest otherwise. Plaintiffs' claims must

5    be dismissed.

6    **STATEMENT OF THE CASE**

7    **A.**    **The Parties**

8    eBay is a Delaware corporation with its principal executive offices in San

9    Jose. eBay provides online marketplaces for the sale of goods and services, online

10    payment systems, and online communications. (Consolidated Complaint ("Compl.") ¶

11    14.) In each case, eBay serves a diverse community of individuals and businesses. (*Id.*)

12    eBay's online marketplace enables sellers to list items for sale in either auction-style or

13    fixed-price formats and buyers to bid for and purchase those items. (*Id.*)

14    Named plaintiffs are four individuals from California and elsewhere who

15    claim to have been active sellers on eBay for a number of years. (*Id.* ¶¶ 10-13.) Each

16    plaintiff claims to have both a Personal and Premier PayPal account. (*Id.*) Plaintiffs

17    claim to represent either a class of "all auction sellers on eBay" or a subclass of "all

18    auction sellers on eBay who accept PayPal." (*Id.* ¶¶ 116-17.) In neither their individual

19    allegations nor their class allegations do Plaintiffs mention the party without which there

20    would be no eBay transactions—buyers. (*Id.* ¶¶ 10-13, 116-17.) Individual Plaintiffs do

21    not say whether they have used eBay to make purchases and, if so, how they paid for

22    those purchases. (*See id.* ¶¶ 10-13.) Plaintiffs do not claim to represent buyers who use

23    eBay. (*See id.* ¶¶ 116-17.)

24    **B.**    **PayPal**

25    PayPal enables individuals and businesses to send and receive payments

26    online by use of credit cards or bank transfers. (*Id.* ¶ 14.) Users set up accounts that can

27    be funded in many different ways. (*Id.* ¶ 46.) Users can, for example, fund a PayPal

28    payment by linking their PayPal account to a Visa or MasterCard payment card

1    ("Bankcard Payments"). (*Id.*) Users can also fund payments from an existing balance

2    in their PayPal account, or with direct deposits from a bank account via the electronic

3    transaction network known as the Automated Clearing House or ACH system ("Direct

4    Payments"). (*Id.*)

5         PayPal users who want to accept payments can open one of three accounts:

6    "Personal," "Premier," or "Business." (*Id.* ¶ 90.) As Plaintiffs acknowledge, these

7    accounts differ primarily in terms of the volume of transactions processed and the

8    associated fees. (*Id.* ¶¶ 92, 98-101.) Personal accounts are designed to facilitate person-

9    to-person money transfers. Users with Personal accounts may receive up to five-hundred

10   dollars for the sale of goods and are limited to five credit card transactions per twelve

11   month period. Personal accounts do not pay any fee to receive Direct Payments, but they

12   pay 4.9% plus thirty cents for each domestic Bankcard Payment they receive. (PayPal

13   User Agreement ¶ 8.)[1]

14        Premier and Business accounts are designed to enable users to run online

15   businesses. Users with these accounts can accept unlimited sums for the sale of goods and

16   an unlimited number of Bankcard Payments. (*Id.*). Premier and Business users pay fees

17   for all PayPal transactions. Although the fees vary depending on volume, the standard

18   rate for domestic transactions is 2.9% plus thirty cents. These fees are higher than the fee

19   Personal users pay on Direct Payments, but lower than the fee on Bankcard Payments.

20   (Compl. ¶ 99.) PayPal converts Personal accounts that exceed the transaction limits

21   described above into Premier or Business accounts. (*Id.* ¶¶ 97-99.)

22        **C.    Paying for Purchases In eBay's Electronic Marketplace**

23        As Plaintiffs recognize, "[a] necessary element of any auction is the transfer

24   of money from the buyer to the seller in exchange for the auctioned goods." (*Id.* ¶ 30.)

25   Because PayPal's online payment systems were complimentary to eBay's online business,

26

27   ─────────────────
     [1]    Because Plaintiffs have referred to the PayPal User Agreement in the complaint, this Court can consider the
     entire agreement on this motion to dismiss. *See, e.g., Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1972 n.13 (2007);

28   *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). The agreement is attached to the
     Declaration of Thomas P. Brown submitted herewith.

1    eBay acquired PayPal in 2002. (*Id.* ¶ 16.)

2              Plaintiffs acknowledge, as they must, that eBay sellers are free to accept a

3    wide variety of payment forms. They can accept Visa, MasterCard, Discover or American

4    Express. (*Id.* ¶ 44, 47.) They can accept cash, checks or money orders. (*Id.* ¶ 47.) They

5    can accept online payments from at least four online payment services other than PayPal:

6    Bidpay, Propay.com, Checkfree.com, and Hyperwallet.com. (*Id.* ¶¶ 47, 74-75.) They can

7    even choose not to accept PayPal (although, starting earlier this year, sellers new to eBay,

8    while they may accept other forms of payment, must either accept PayPal or present some

9    proof that they can otherwise accept Visa or MasterCard). (*Id.* ¶¶ 44, 47, 50.) Plaintiffs

10   complain that these other payment services are not equal to PayPal, but concede that

11   alternative payment methods are available and used in the eBay marketplace. (*Id.* ¶¶ 47-

12   50, 55, 74-75.)

13             Users who accept PayPal are subject to certain rules. One of them is at the

14   heart of this lawsuit. eBay allows consumers—*i.e.*, eBay buyers—who elect to use

15   PayPal to complete their eBay transactions to choose how to fund their PayPal payments.

16   (*Id.* ¶ 46.) In order to give consumers this freedom, eBay must require eBay sellers to

17   accept all PayPal transactions regardless of the source of funding. (*Id.* ¶ 88.) This means

18   that eBay sellers who select PayPal must open a Premier or Business account if they sell

19   more than five-hundred dollars worth of goods. (*Id.* ¶¶ 87, 98.)

20      **D.      Plaintiffs' Claims**

21           **1.      Monopolization and Attempted Monopolization**

22             Plaintiffs allege that eBay has monopolized (or attempted to monopolize)

23   (1) the market for online auctions in the United States and (2) the market for person-to-

24   person online payment systems in the United States. (*Id.* ¶¶ 113-14.) According to

25   Plaintiffs, eBay's dominant position in both alleged markets was created and maintained

26   by allegedly anticompetitive activities, including:

27             (a) acquiring strategic competitors to protect against threats to
28             eBay's monopoly of the online auction market and the person-to-

                                                4        EBAY'S NTC. OF MOTION AND MOTION TO DISMISS
                                                         CASE # C 07-01882 (JF)

person online payment systems market;

(b) implementing anticompetitive policies intended to maintain eBay's monopoly of the online auction market and person-to-person online payment systems market, including forcing auction sellers to accept PayPal as a necessary means to successfully sell items on eBay, prohibiting sellers from person-to-person online payment systems that pose a serious competitive threat to eBay, and tying separate payment products within PayPal; and

(c) entering into agreements with competitors or potential competitors to protect eBay's online auction and person-to-person online payment systems market dominance.

(*Id.* ¶ 5; *see also* ¶¶ 127, 137.)

## 2.      Tying

Plaintiffs also assert that eBay has engaged in an illegal tying arrangement in violation of Section One of the Sherman Act.  They define the "tying" product as acceptance of Direct Payments—what they describe in their complaint as "person-to-person stored-value transactions."  (*Id.* ¶ 146.)  They define the "tied" product as acceptance of Bankcard Payments.  (*Id.*)  In other words, they claim that eBay, by letting consumers—*i.e.*, buyers—choose how to fund their PayPal accounts and forbidding sellers from vetoing the consumer's choice, has tied otherwise separate products.  Plaintiffs allege—but only on information and belief—that the tie forces sellers to pay supracompetitive fees for use of PayPal's Payment Card services.  (*Id.* ¶ 6.) Plaintiffs acknowledge that "[i]f given the option, sellers with merchant accounts for Payment Cards could elect *not* to use PayPal to process purchases made by Payment Cards but limit PayPal to money transfers."  (*Id.* ¶ 101 (emphasis in original).)

## 3.      State Law Claims

Plaintiffs assert that the above allegations state claims under California Business & Professions Code §§ 16720 and 16727 (the "Cartwright Act" claims), and constitute "unlawful" and "unfair" business practices in violation of California Business & Professions Code § 17200 (the "UCL" claims).

EBAY'S NTC. OF MOTION AND MOTION TO DISMISS
CASE # C 07-01882 (JF)

1

## **LEGAL STANDARD**

2      The Federal Rules of Civil Procedure require "a [1] short and [2] plain

3 statement of the claim showing [3] that [plaintiff] is entitled to relief." Fed. R. Civ. P.

4 8(a).  Plaintiffs' complaint does not deliver.  It is long, convoluted and, ultimately, fails to

5 state a claim on which relief can be granted.

6      As the non-moving party, Plaintiffs are entitled to the benefit of certain

7 presumptions.  The well-pleaded allegations in their complaint must be assumed to be

8 true, and those allegations must be read in the light most favorable to them.  Nonetheless,

9 a plaintiff must base a claim on facts, not "conclusory allegations of law [or] unwarranted

10 inferences." *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001).  The Supreme Court last

11 month confirmed that "a plaintiff's obligation to provide the 'grounds' of his

12 'entitle[ment] to relief' requires more than labels and conclusions." *Bell Atl. Corp. v.*

13 *Twombly*, 127 S. Ct. 1955, 1964-65 (2007).  In other words, if the facts alleged in a

14 complaint, stripped of such rhetoric, would not support a verdict for the plaintiff, the

15 claim must be dismissed.  It is here that Plaintiffs' complaint runs aground.

16

## **ARGUMENT**

17      Plaintiffs' seven claims all turn on the same axis.  They believe that they

18 paid too high a price either to use the eBay marketplace or to have PayPal process their

19 sales transactions within the eBay marketplace.  Of course, an objection to a price that the

20 plaintiff claims is "too high" does not by itself support an antitrust claim. *Verizon*

21 *Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).

22 eBay has built a platform that is attractive to buyers and sellers of virtually every good or

23 service imaginable, and it is, as a matter of law, entitled to charge whatever price it wants.

24 As Judge Hand famously observed a half-century ago, "[t]he successful competitor,

25 having been urged to compete, must not be turned upon when he wins." *United States v.*

26 *Aluminum Co. of Am.*, 148 F.2d 416, 430 (2d Cir. 1945).

27      Plaintiffs seem to recognize that they cannot use antitrust law to attack

28 eBay's prices simply because they believe them to be "too high" and, thus, claim that

EBAY'S NTC. OF MOTION AND MOTION TO DISMISS
CASE # C 07-01882 (JF)

eBay gained pricing power through conduct that violates Federal and state antitrust law. They attack virtually everything eBay has done over the last decade—from a promotional agreement signed with AOL in 1997 through its continuing efforts to integrate PayPal into its online marketplace. But Plaintiffs have failed to allege facts to support the ultimate conclusion that the conduct described in their complaint violates the law. They have not

> (1) alleged facts sufficient to plead a relevant market;

> (2) identified anticompetitive conduct sufficient to support their claims for monopolization or attempted monopolization;

> (3) alleged facts necessary to support the conclusion that the practices labeled as a "tying" arrangement pose a threat to competition; or

> (4) alleged facts that would, if proved, establish the harm to consumers necessary to support any antitrust claim.

Thus, eBay respectfully submits that this Court should dismiss all of the claims in Plaintiffs' complaint for failure to state a claim on which relief may be granted.

## I.    Plaintiffs Fail To State A Claim Under Section Two Of The Sherman Act.

A claim for monopolization under Section Two has two requirements: (1) possession of monopoly power in the relevant market and (2) "the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Trinko*, 540 U.S. at 407. Plaintiffs' allegations fall short on both accounts, and their Section Two claims must be dismissed.[2]

### A.    Plaintiffs Fail To Allege Facts Supporting Their Relevant Markets.

A coherent definition of a relevant product market is an essential element of a finding of monopoly power or a dangerous probability of acquiring monopoly power. The Ninth Circuit has made it clear that the basis of every legitimate antitrust claim "is the impact upon competitive conditions in a definable market . . . ." *McGlinchy v. Shell*

---

[2]    In order to state a claim for attempted monopolization, a plaintiff must show: (1) specific intent to control prices or destroy competition, (2) predatory or anticompetitive conduct directed toward accomplishing that purpose, (3) a dangerous probability of success, and (4) causal antitrust injury. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1477 (9th Cir. 1997). For the reasons discussed below, Plaintiffs have also failed to state a claim for attempted monopolization.

1   *Chem. Co.*, 845 F.2d 802, 812-13 (9th Cir. 1988).  As a result, *each* antitrust claim

2   requires as a predicate a properly defined relevant market.  *See Big Bear Lodging Ass'n v.*

3   *Snow Summit, Inc.*, 182 F.3d 1096, 1104-05 (9th Cir. 1999).  Federal courts routinely

4   dismiss complaints that, as here, fail to appropriately define a relevant market because, as

5   the Supreme Court has held, "[w]ithout a definition of that market there is no way to

6   measure [a defendant's] ability to lessen or destroy competition."  *Walker Process Equip.,*

7   *Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965).  *See, e.g., Tanaka v. Univ.*

8   *of S. Cal.,* 252 F.3d 1059, 1063 (9th Cir. 2001) (affirming dismissal of plaintiff's Sherman

9   Act claims because plaintiff did not sufficiently allege a relevant product market); *Big*

10  *Bear,* 182 F.3d at 1105 (same).

11          A properly alleged market begins with the product at issue.  As the Supreme

12  Court recognized in *United States v. E.I. du Pont de Nemours & Co.*, the product market

13  relevant to an antitrust claim requires an appraisal of the cross-elasticity of demand and

14  the reasonable interchangeability of products by consumers.  351 U.S. 377, 394-95

15  (1956).  Because a relevant product market includes all products that are reasonably

16  interchangeable, a plaintiff must allege a relevant product in those terms.  "Where the

17  plaintiff fails to define its proposed relevant market with reference to the rule of

18  reasonable interchangeability and cross-elasticity of demand, or alleges a proposed

19  relevant market that clearly does not encompass all interchangeable substitute products

20  even when all factual inferences are granted in plaintiff's favor, the relevant market is

21  legally insufficient and a motion to dismiss may be granted."  *Queen City Pizza, Inc. v.*

22  *Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3rd Cir. 1997).  Courts have not hesitated to

23  dismiss claims that fail to properly plead a relevant market under this test.  *See, e.g.,*

24  *Mathias v. Daily News*, *L. P.* 152 F. Supp. 2d 465, 481-83 (S.D.N.Y. 2001) (dismissing

25  complaint because plaintiff failed even to reference the rule of reasonable

26  interchangeability).

27          Although Plaintiffs label eBay a "monopoly," they have failed to define the

28  markets that they accuse eBay of monopolizing.  Plaintiffs describe eBay.com as a place

1  where "sellers . . . list items for sale in either auction or fixed-price formats and buyers . . .

2  bid for and purchase such items." (Compl. ¶ 14.) They claim that PayPal "enables

3  individuals and businesses to send and receive payments online by use of credit cards or

4  bank transfers." (*Id.*) Subsequent paragraphs in the complaint merely embellish these

5  basic allegations. Plaintiffs explain, for example, that eBay allows users to "search

6  auction listings for specific items or search by category, key word, seller name, [etc]."

7  (*Id.* ¶ 15.)

8        These allegations do not acknowledge that alternatives to eBay or PayPal

9  exist let alone distinguish them from the pool of obvious substitutes. Plaintiffs do not

10  claim that eBay is the only place to buy the things up for sale in its marketplace or that

11  eBay's online marketplace serves as the only platform for buyers and sellers of such

12  things. Nor do they claim that PayPal represents the only way for people to make

13  payments and, thus, complete such transactions. These omissions are, presumably,

14  deliberate. After all, long before eBay was conceived, buyers and sellers of products

15  ranging from cars to computer equipment to comic books found ways to complete sales.

16  They gathered together and still meet through classified ads (both online and offline), car

17  dealerships, department stores, comic book conventions and everywhere else that people

18  buy and sell things. And they had—and still have—no shortage of payment alternatives.

19        Put slightly different, in order for Plaintiffs to pursue an antitrust claim, they

20  have to identify some problem with competition in a properly defined market as a whole,

21  not just within eBay. As numerous courts have explained, the law requires the plaintiff to

22  define a market in order to identify the larger area in which the defendant's conduct may

23  pose a problem. *See Elliott v. United Center*, 126 F.3d 1003 (7th Cir. 1997) (affirming

24  dismissal of a Section Two claim complaining that a sports stadium had monopolized the

25  sale of food at its facility). Plaintiffs' existing complaint does not attempt to do this.

26  They do not acknowledge that people use means other than eBay to buy and sell things,

27  and to the extent that they concede the existence of forms of payment other than PayPal,

28  they do not provide any reason to believe that these systems have a problem competing

1   for transactions outside of the eBay marketplace. Google is, according to Plaintiffs'

2   complaint, essentially giving away person-to-person transaction processing for payment

3   card transactions. (Compl. ¶ 62.) Billpay.com, neteller.com, Netpayc.com and

4   secondmoneyorder.com, among others, also facilitate person-to-person payments that

5   originate outside of the eBay marketplace. If Plaintiffs' complaint is to be believed, these

6   companies and other companies are, like Google, willing to process person-to-person

7   payments at rates "materially less than what sellers pay for PayPal transactions." (*Id.*

8   ¶ 100.)

9          Plaintiffs use the term "monopoly" quite liberally, but they allege very little.

10  They claim (1) that "eBay's active users (all those who bid on, bought, or listed an item)

11  increased from 56.1 million in 2004, to 71.8 million in 2005, reaching 81.8 million in

12  2006," (*id.* ¶ 18), and (2) that "[i]n 2006, eBay's annual revenue exceeded $6.0 billion,"

13  (*id.* ¶ 112). But Section Two does not prohibit either of these things. Rather, Section

14  Two bars firms from acquiring, maintaining or attempting to acquire monopoly power in a

15  market defined by the rigorous standards set forth in the case law. *See Tanaka*, 252 F.3d

16  at 1063 ("[C]onclusory assertion that the 'UCLA women's soccer program' is 'unique'"

17  and not interchangeable with other programs is insufficient to support a claim). Plaintiffs'

18  complaint is essentially silent regarding the existence of alternatives to eBay or PayPal.

19         Because Plaintiffs have failed to plead facts supporting the existence of their

20  alleged markets—or that eBay has market power in those markets—all of Plaintiffs'

21  antitrust claims must be dismissed.[3]

22  **B.    Plaintiffs Have Failed Properly To Allege That eBay Acquired Or
            Maintained Its Market Position By Engaging In Anticompetitive
23          Conduct.**

24         In order to bring a claim of monopolization or attempted monopolization, a

25  plaintiff must do more than simply label the defendant a monopolist. It must allege that

26  _____

27  [3]      California's Cartwright Act was patterned after Section One of the Sherman Act and federal law construing
     Section One is also applicable to the Cartwright Act. *See Big Bear*, 182 F.3d at 1101; *Morrison v. Viacom, Inc.*, 66
     Cal. App. 4th 534, 541 n.2 (1998) (citations omitted). Thus, the federal case law requiring Plaintiffs to sufficiently
28  plead a relevant market applies equally to Plaintiffs' Cartwright claim.

EBAY'S NTC. OF MOTION AND MOTION TO DISMISS
                                            CASE # C 07-01882 (JF)

the defendant acquired or maintained its power through conduct from which consumers cannot plausibly benefit. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). Section Two bars firms from investing in activities that make economic sense not as a means to compete on the merits but only as an effort to suppress or prevent competition from rival firms. *Id.; see also Trinko*, 540 U.S. at 399 (holding that conduct is anticompetitive if it demonstrates "a willingness to forsake short-term profits to achieve an anticompetitive end"); *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 523 (5th Cir. 1999)("[A] finding of exclusionary conduct requires some sign that the monopolist engaged in behavior that—examined without reference to its effects on competitors—is economically irrational.").

The Supreme Court's recent decision in *Trinko* illustrates this point. In that case, a unanimous Supreme Court held that Section Two did not require Verizon to open its network to its rivals. As the *Trinko* Court explained, "[t]he mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system." 540 U.S. at 407. The prospect of charging a monopoly price induces firms to take the risks and make the investments that yield "innovation and economic growth." *Id.* Warning that Section Two, if misconstrued, can chill pro-competitive behavior, the Court reiterated that "the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct.*" *Id.* (emphasis in original); *see also Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.,* 127 S. Ct. 1069, 1075 (2007) (warning that mistaken findings of liability under Section Two "chill the very conduct the antitrust laws are designed to protect").

Plaintiffs here do not challenge conduct that falls anywhere close to the spectrum proscribed by Section Two. Plaintiffs base their monopolization claims on (1) eBay's acquisition of what they characterize as "strategic competitors" such as PayPal and Verisign's payment gateway business; (2) the implementation of what they label as "anticompetitive policies" such as requiring eBay sellers who accept PayPal to accept all

EBAY'S NTC. OF MOTION AND MOTION TO DISMISS
CASE # C 07-01882 (JF)

1   types of PayPal transactions and barring certain online payment systems from use in the

2   eBay marketplace; and (3) entering marketing agreements with AOL, Google and Yahoo.

3   (Compl. ¶¶ 5, 127.)  Each of these allegations—strategic acquisitions, determining how

4   customers will pay for products purchased in the business and signing up with well-

5   known providers of complimentary products and services—are ordinary and

6   unremarkable on their face.  Plaintiffs allege nothing to transform them into conduct that

7   suppresses competition from rivals.

8             **1.    Acquisition of "Strategic Competitors"**

9           None of the three businesses identified as eBay's "strategic competitors"

10   offered anything like eBay's electronic marketplace.  As Plaintiffs admit, each of them

11   offered electronic payment services that eBay needed in its marketplace.  (Compl. ¶ 30.)

12   By acquiring these businesses, eBay was expanding the set of services that it offered to

13   include services related to but distinct from its electronic marketplace.  It was, in other

14   words, vertically integrating.  *See Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S.

15   36, 54 (1977).  Plaintiffs offer no facts to support a claim that this vertical integration was

16   anticompetitive.

17           Like other vertical restraints, such as exclusive dealing arrangements,

18   territorial restraints and maximum resale price maintenance, vertical integration enables a

19   manufacturer to "achieve certain efficiencies in the distribution of his products." *Id.* As a

20   result, courts routinely reject antitrust cases attacking vertical mergers and recognize the

21   inherent efficiency of vertical integration.  *See, e.g., Paschall v. Kansas City Star Co.,* 727

22   F.2d 692, 704 (8th Cir. 1984) (en banc) ("[W]e find it hard to ignore the fact that every

23   other antitrust case brought against a newspaper publisher challenging the newspaper's

24   decision to forwardly integrate into distribution has been resolved in favor of the

25   newspaper."); *O'Neill v. Coca-Cola Co.,* 669 F. Supp. 217, 224 (N.D. Ill. 1987) (rejecting

26   antitrust attack on vertical merger based on plaintiff's "fail[ure] to assert any logical

27   connection between vertical acquisitions and [competition in the relevant market]").

28           Plaintiffs do not offer anything to support their conclusory allegation that

1   eBay's decision to integrate vertically into the payment industry harmed competition.

2   They do not allege facts to support any of the theories of competitive harm that have

3   traditionally been used to attack vertical integration.  For instance, they do not, and could

4   not, allege that any one of these three businesses was, somehow, uniquely situated to

5   create an eBay-style online marketplace or would be essential to someone else doing so.

6   Nor do they claim that eBay, following the acquisition of these businesses, stopped

7   facilitating payments for competing online marketplaces.  Absent these or similar

8   allegations, there is no logical basis for concluding that eBay's expansion into the

9   payment industry harmed competition in any relevant market.

10          In fact, far from harming competition, eBay's progressive expansion into

11   payments clearly benefited consumers, as the complaint, read carefully, effectively

12   concedes.  If payments are, as Plaintiffs claim, a "necessary element of any auction,"

13   (Compl. ¶ 30), it seems obvious that eBay can make its platform more attractive to buyers

14   and sellers by integrating that element into its platform.  Not that any confirmation is

15   necessary, but Plaintiffs are not alone in reaching this conclusion.  The Department of

16   Justice explained the decision to approve the merger between eBay and PayPal in

17   precisely these same terms, "Integrating [eBay and PayPal] would make transactions more

18   convenient for eBay buyers and also improve the detection of fraud . . . ."  *Commentary*

19   *on the Horizontal Merger Guidelines,* issued by the DOJ and FTC, available at

20   http://www.usdoj.gov/atr/public/guidelines/215247.htm. (March 2006).

21                  **2.      eBay's Alleged Anticompetitive Policies**

22          Plaintiffs likewise fail in their effort to base their Section Two claims on

23   what they characterize as eBay's "implement[ation] [of] anticompetitive policies . . .

24   including forcing auction sellers to accept PayPal as a necessary means to successfully

25   sell items on eBay, prohibiting sellers from person-to-person online payment system that

26   pose a serious competitive threat to eBay, and tying separate payment products within

27   PayPal."  (Compl. ¶ 5.)

28          With regard to their claims relating to competition among "online auctions,"

1   this allegation suffers from the same flaw as Plaintiffs' vertical integration allegation

2   above. By acquiring and integrating payments into its electronic marketplace, eBay

3   simply made its service more attractive to buyers and sellers than other competing

4   platforms. Although a successful eBay might attract business that would, in its absence,

5   go elsewhere, Plaintiffs do not offer any facts to support their claim that the conduct was

6   anticompetitive. On the allegations in Plaintiffs' complaint, this is plainly conduct that

7   the antitrust laws applaud, not condemn. *See Trinko*, 540 U.S. at 407-08.

8          The allegation is similarly, if not quite as dramatically, flawed when

9   analyzed from the perspective of Plaintiffs' Third and Fourth claims. By integrating

10  PayPal into its online marketplace, eBay has clearly made it easier to use PayPal instead

11  of other payment service providers. But antitrust law does not level the competitive

12  playing field or punish all efforts to promote one's own service to the exclusion of the

13  services offered by one's competitors. Per the Supreme Court in *Trinko*, eBay has no

14  general obligation to open its electronic marketplace up to other forms of payment. *See*

15  *id.* ("Compelling such firms [that have built a unique infrastructure] to share the source of

16  their advantage is in some tension with the underlying purpose of antitrust law, since it

17  may lessen the incentive for the monopolist, the rival, or both to invest in those

18  economically beneficial facilities.").

19         Absent allegations that the integration of PayPal into the eBay marketplace

20  and the exclusion of potentially competing payment forms from that marketplace is

21  inconsistent with eBay's short-term interest, this conduct simply cannot be characterized

22  as anticompetitive. Plaintiffs do not even attempt to show that integrating PayPal into

23  eBay was somehow inconsistent with eBay's short-term interest. As a result, this conduct

24  cannot support an antitrust claim. *See id.*

25         **3.    The Marketing Agreements**

26         The allegations relating to the marketing deals with AOL, Yahoo and

27  Google do not pass the "straight face" test. The plain language of the complaint makes

28  clear that the deals eBay entered with AOL, Yahoo and Google were ordinary business

14      EBAY'S NTC. OF MOTION AND MOTION TO DISMISS
        CASE # C 07-01882 (JF)

transactions. According to Plaintiffs' complaint, eBay signed the deal in 1997 at a time when it had only 300,000 users. (Compl. ¶ 26.) It paid AOL $700,000 to gain the benefit of "AOL's skill at ecommerce at the time, and because of the large overlap between the two companies' registered users." (*Id.* ¶ 103.) eBay entered the promotional alliance with Yahoo in order to increase the visibility of its listing on the Yahoo search engine. (*Id.* ¶ 107.) It signed the deal with Google to promote "click to call" technology that it acquired when it purchased Skype in 2005. (*Id.* ¶ 109.) Mislabeling aside, it is hard to see how these agreements could violate the antitrust laws.

*    *    *

In sum, Plaintiffs' allegations do not rise to the level of anticompetitive conduct necessary to support a monopolization claim. There is real risk in allowing antitrust claims to advance beyond the pleading stage based simply on what Justice Cardozo once labeled the "tyranny of tags and tickets." Benjamin N. Cardozo, *Mr. Justice Holmes*, 44 Harv. L. Rev. 682, 688 (1931). As the Supreme Court recently observed in *Twombly*, hanging the label "anticompetitive" on perfectly legitimate conduct does not make it so, and it should not entitle Plaintiffs to unleash massive discovery. *See Twombly*, 127 S. Ct. at 1967 ("[T]he costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint") (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). Plaintiffs' claims must, as a result, be dismissed.

## II.  Plaintiffs Do Not Allege An Illegal Tying Arrangement Under Either Section One Of The Sherman Act Or The Cartwright Act.

Plaintiffs attack as a *per se* illegal tying arrangement a practice that is plainly neither a tying arrangement nor *per se* illegal. Under modern antitrust principles, *per se* condemnation is reserved for practices, such as horizontal price fixing among competitors, that have a "pernicious effect on competition and lack . . . any redeeming virtue." *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958). This simply cannot

1  be said of eBay's practice of requiring sellers who elect to use PayPal to accept all PayPal

2  transactions. *See Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 126 S. Ct. 1281, 1287-88

3  (2006) (discussing the "changing view of tying arrangements" and approving of Justice

4  O'Connor's concurrence in *Jefferson Parish*, which questioned the propriety of treating

5  any tying arrangement as a *per se* violation).[4]

6          The essence of an illegal tying arrangement under Section One of the

7  Sherman Act or § 16720[5] of the Cartwright Act is basically the same. As the Ninth

8  Circuit has put it, the "hallmark of a tie-in is that it denies competitors free access to the

9  tied product market." *Siegel v. Chicken Delight*, 448 F.2d 43, 47 (9th Cir. 1971).

10  *Morrison v. Viacom, Inc.*, 66 Cal. App. 4th 534, 546 (1998) illustrates this point under

11  California law. In *Morrison*, plaintiffs complained that Viacom forced them to purchase

12  broadcast channels that they could otherwise get for free in order to obtain satellite cable

13  channels. Viacom demurred, observing that if the tied product was available for free

14  outside of its alleged tie, then the tie could not possibly have foreclosed access of

15  competing suppliers to the market. The *Morrison* court agreed and sustained the demurrer

16  without leave to amend. This allegation, the court held, "*establishes that the challenged*

17  *practice has no effect on competition in the tied product market.*" *Id.* at 543 (emphasis

18  added). Numerous Federal courts have rejected purported "tying" claims on precisely this

19  same ground. *See, e.g.*, *Driskill v. Dallas Cowboys Football Club, Inc.*, 498 F.2d 321,

20  323 (5th Cir. 1974) (rejecting tying claim that defendant forced consumers to buy

21  unwanted preseason football tickets if they wished to buy a season ticket package because

22  there were no foreclosed competing sellers of preseason tickets); *United Magazine Co. v.*

---

23  [4]     eBay reserves the argument that, as suggested by the Department of Justice and Federal Trade Commission,
24  the Supreme Court's opinions in *Jefferson Parish* and *Kodak* should be overturned to the extent they relieve a
   plaintiff from the necessity of alleging and proving harm to competition in the tied product market. *See* Department
25  of Justice and Federal Trade Commission, *Antitrust Guidelines for the Licensing of Intellectual Property* (Apr. 6,
   1995).
26  [5]     Plaintiffs allege an illegal tying arrangement under both §§ 16720 and 16727 of the Cartwright Act. Section
   16727 is specific to tying arrangements in the sale of "goods, merchandise, machinery, supplies, [or] commodities."
27  Cal. Bus. & Prof. Code § 16727. The alleged tying item here—PayPal's stored-value transactions—is a *service*
   rather than a commodity and § 16727 therefore does not apply. *See Morrison*, 66 Cal. App. 4th at 546 (affirming
28  demurrer on § 16727 claim because the tying item (satellite channels) was a service and § 16727 does not apply to
   land, services or credit).

16     EBAY'S NTC. OF MOTION AND MOTION TO DISMISS
           CASE # C 07-01882 (JF)

1   *Murdoch Magazines Distribution, Inc.,* 146 F. Supp. 2d 385, 400 (S.D.N.Y. 2001)

2   (rejecting tying claim where plaintiff alleged that the tied product was not wanted

3   observing that, if the tied product "would not have been purchased at all, no competition

4   in the market for those tied products was foreclosed.").

5            The practice challenged here is highly analogous to practices typically

6   labeled "line-forces."  Manufacturers often require distributors to stock a full-line of a

7   particular product rather than permitting them to stock only the popular elements. [6]

8   Distributors sometimes attack such line-forces as tying arrangements, labeling the highly

9   desirable elements, the tying product, and the less desirable elements of the line, the tied

10  product.  As often as such claims are brought, they are rejected.  As numerous courts have

11  held, although line-forces may limit the options available to dealers, they do not constrain

12  the choices available to the ultimate consumer—*i.e.*, buyers in the downstream market.

13  Line-forces do not prevent competing manufacturers from getting their products to

14  market, and they leave the ultimate consumer free to purchase the products separately or

15  not at all (just as the buyer in the eBay marketplace can choose to pay using a payment

16  type other than PayPal).  As a result, line-forces do not trigger the concerns that animate

17  the rule prohibiting tying arrangements. *See Roy B. Taylor Sales, Inc. v. Hollymatic*

18  *Corp.,* 28 F.3d 1379, 1383 (5th Cir. 1994) (refusing to apply *per se* analysis to tie that

19  constrained distributors but not the ultimate consumer on the ground that such ties "create

20  relatively little danger to competition"); *Southern Card & Novelty, Inc. v. Lawson Mardon*

21  *Label, Inc.,* 138 F.3d 869, 875 (11th Cir. 1998) (same); *Smith Machinery Co. v. Hesston*

22  *Corp.,* 878 F.2d 1290, 1294 (10th Cir. 1989) (same). [7]

---

23  [6]      A line-force is "full" when it applies across a manufacturer's entire stock of products and "representative"

24  when it applies to a subset of products. *Southern Card & Novelty, Inc. v. Lawson Mardon Label, Inc.,* 138 F.3d 869, 875 n.8 (11th Cir. 1998).

25  [7]      The court in *Smith Machinery* explained that:
            In a line forcing situation, where a dealer is serving as an intermediate
            link in a distribution chain, if one manufacturer is foreclosed from

26          selling to a dealer because of the arrangement, it is likely going to find
            another way to take its product to market, providing a profit potential

27          continues to exist.  In such a case, there is no ultimate foreclosure to
            the consumer of a choice of goods.

28  878 F.2d at 1297.

Plaintiffs' *per se* tying claim suffers from the same flaw as the tying claims rejected in *Morrison*, *United Magazine* and the line-forcing cases.   Plaintiffs admit that eBay allows sellers to accept (and buyers to choose among) numerous forms of payment aside from PayPal. (Compl. ¶ 47.) They also admit that they have access to a host of payment providers outside of the eBay marketplace and that many of these other payment companies, including Google, offer their services for free or close to it.  (*Id.* ¶¶ 47, 62, 67.) Plaintiffs complain only that within eBay's alleged marketplace sellers who use PayPal must accept all PayPal transactions.  (*Id.* ¶¶ 94-95.)  In so framing their complaint, they implicitly concede three points, any of which is ultimately fatal to their *per se* tying claim:  (1) eBay allows sellers to accept other forms of payment within the eBay marketplace; (2) eBay does not require anyone to use PayPal outside of eBay; and (3) eBay *never* forces buyers—who are the ultimate consumers—to use PayPal in the eBay marketplace or at all.  eBay simply requires that consumers be given the *choice* to use either credit card payments or direct payments with PayPal—if the seller accepts PayPal at all.  Requiring that buyers be given a choice is the opposite of the coercion required to state a tying claim.  As a result, the alleged tie cannot "foreclose" competition and is not illegal *per se* or otherwise.[8]  *See generally United States v. Brown Univ.*, 5 F.3d 658, 675 (3d Cir. 1993) ("Enhancement of consumer choice is a traditional objective of the antitrust laws and has also been acknowledged as a procompetitive benefit.").

The underlying flaw in Plaintiffs' tying claim manifests itself in another way as well.  As the Ninth Circuit held in *Chicken Delight*, the question of the injury, if any, suffered as a result of an alleged tying must be measured by looking at the package price—*i.e.*, comparing the total price of the tying and the tied products with and without the tie.  *See* 448 F.2d at 52; *Kypta v. McDonald's Corp.*, 671 F.2d 1282, 1285 (11th Cir.

---

[8]        In fact, the alleged "tie" is not really a tie at all.  As the Supreme Court and the antitrust enforcement agencies have repeatedly observed, a tying arrangement is a type of a "requirements" contract.  *See Antitrust Enforcement and Intellectual Property Rights: Promoting Innovation and Competition* at 103, issued by the DOJ and FTC, available at http://www.usdj.gov/atr/public/hearings/ip/222655.htm. (2006) ("A 'requirements tie in' sale occurs when a seller requires customers who purchase one product from the seller (*e.g.*, a printer) also to make all their purchases of another product from the seller (*e.g.*, ink cartridges).");  *see also Int'l Salt Co. v. United States*, 332 U.S. 392, 398 (1947).

1982) (following *Chicken Delight* and adopting package price approach to determine injury for a tying claim). In order for a tying arrangement to affect competition and, thus, the package price, a tie must limit demand for the tied products supplied by competing firms to the point that those competitors curtail production and, thus, raise prices. The facts necessary to support such a claim are, as Professors Areeda and Hovenkamp explain in their treatise, "elusive." 10 Phillip E. Areeda, *Antitrust Law*, ¶ 1769b, 412 (1996). Plaintiffs do not allege such facts here. Indeed, their complaint alleges exactly the opposite. As they explain, Google is giving a competing payment service away for free. (Compl. ¶ 62.) This allegation cannot be squared with their tying claims.

In order to sustain their tying claims, Plaintiffs must allege facts that if they were ultimately proved true, would support a conclusion that eBay's actions have actually harmed competition. *See Twombly*, 127 S. Ct. at 1971. For the reasons discussed above, they have not and cannot.[9] Accordingly, Plaintiffs' tying claim under the Cartwright Act[10] and Section One of the Sherman Act must be dismissed.

### III.   **Plaintiffs Do Not Allege Harm To Consumer Welfare.**

Plaintiffs are sellers of products on eBay. They criticize eBay's practices solely from that perspective. But here there are two sets of consumers—sellers and buyers. As numerous courts have held, consumer welfare as a whole is the touchstone of antitrust analysis. *See, e.g., Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th

---

[9]       For these same reasons, Plaintiffs fail to state a claim under the rule of reason. *See, e.g., Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Sys., Inc.*, 732 F.2d 1403, 1408 (9th Cir. 1984) ("To succeed on a rule of reason claim, an antitrust plaintiff must prove that the restraint in question injures competition in the relevant market.").

[10]       Although the precise nature of Plaintiffs' claims under the Cartwright Act is unclear, Plaintiffs are apparently alleging that eBay combined with its coerced competitors to form an illegal tying arrangement. (Compl. ¶ 157.) Plaintiffs separately allege that "eBay and *others presently unknown* entered into and engaged in an unlawful trust, combination or conspiracy in restraint of trade . . . ." (*Id.* ¶ 156.) However, these sparse allegations simply do not work. California courts have held that an "unlawful combination or conspiracy must be alleged with specificity" and "general allegations of a conspiracy unaccompanied by a statement of facts constituting the conspiracy" are subject to dismissal. *See G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256, 265 (1983). Accordingly, to the extent Plaintiffs are alleging a conspiracy apart from the alleged coerced tying arrangement, Plaintiffs must plead specific facts to support the alleged conspiracy. Moreover, Plaintiffs' monopolization claims are not cognizable under the Cartwright Act because the Act does not contain an equivalent provision to Section Two of the Sherman Act, which addresses single firm conduct such as monopolization. *See Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986) (stating that the Cartwright Act "does not address unilateral conduct" and "[n]o California statute deals expressly with monopolization or attempted monopolization").

Cir. 1995) (stating well-established rule that "reduction of competition does not invoke the Sherman Act until it harms consumer welfare"); *J. Allen Ramey, M.D., Inc. v. Pac. Found. of Med. Care*, 999 F. Supp. 1355, 1364 (S.D. Cal. 1998) (same).   In order to state a sustainable antitrust claim against eBay, Plaintiffs must take the interests of buyers and sellers into account.   Unless Plaintiffs allege (and ultimately prove) that the challenged practices render the system less useful to both groups of consumers, Plaintiffs will fail to state an antitrust claim. *See, e.g., Nat'l Bankcard Corp. v. VISA U.S.A., Inc.*, 779 F.2d 592, 602-03 (11th Cir. 1986) (refusing to apply *per se* standard to determine whether card fees were restraint of trade because, in light of the interests of cardholders, fee was ancillary to an efficiency-creating, procompetitive system); *Broadcast Music, Inc. v. CBS, Inc.*, 441 U.S. 1, 24 (1979) (refusing to apply *per se* standard to blanket licensing of copyrighted music because of the benefits these licensing arrangements offered to the musicians protected).

eBay and PayPal both compete in what can be described as a "two-sided" industry.   Such an industry exists when a particular good or service must appeal to two distinct groups of customers in order to be useful to anyone. *See generally* Timothy J. Muris, *Payment Card Regulation and the (Mis)Application of the Economics of Two-Sided Markets*, 2005 Colum. Bus. L. Rev. 515 (2005).   For eBay, the two-sides are sellers and buyers of items. (Compl. ¶ 25.)   For PayPal, as with any payment system, the two-sides are people accepting payments, generally merchants, and people making payments, generally consumers. (Compl. ¶ 14.)

Plaintiffs object to the fact that sellers who use PayPal must accept all PayPal transactions, regardless of how the customer chooses to fund her PayPal account. Plaintiffs, however, make no mention of the impact this policy has on the ultimate "consumer"—the eBay buyer.   Viewed from that standpoint, the allegedly objectionable practice makes perfect sense.   The freedom to use PayPal for any purchase, regardless of how the payment is funded, makes the payment system easier to use and, thus, more attractive to consumers.   In other words, the antitrust injury the Plaintiffs claim is actually

a benefit to another, significantly larger group of consumers. *See* David S. Evans, *The Antitrust Economics of Multi-Sided Platform Markets*, 20 Yale J. on Reg. 352 (2003).

Assume that eBay bowed to the wishes of these Plaintiffs and degraded the service to buyers. Would buyers now have an antitrust claim? That is an absurd result. Where a product is, as here, jointly consumed, the plaintiff must plead and ultimately prove that the challenged practice leaves consumers as a whole—*i.e.* both sets of users— worse off. *See, e.g., CBS*, 441 U.S. at 24; *Visa*, 779 F.2d at 602-03. Because Plaintiffs cannot do so, they cannot show injury to competition and all of their antitrust claims must be dismissed.

## IV. Plaintiffs Have Not Adequately Alleged Any Predicate Acts That Violate The UCL.

Plaintiffs allege that eBay violated California's Unfair Competition Law by engaging in "unlawful" and "unfair" business practices. (Compl. ¶ 160.) But the complaint does not state a claim under either theory of liability.

### A. The Alleged "Unlawful" Acts.

Plaintiffs first assert that eBay engaged in "unlawful" acts by violating the Sherman Act and the Cartwright Act. (Compl. ¶ 161.) However, as discussed above, Plaintiffs have failed to state a claim under either antitrust statute and, thus, there is nothing unlawful about eBay's conduct.

### B. The So-Called "Unfair" Acts.

This leaves only the "unfairness" prong of § 17200, but this does not save Plaintiffs' complaint. Plaintiffs have styled their entire case as an antitrust claim. As the California Supreme Court held in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, conduct that survives an antitrust challenge is, as a matter of law, not unfair. 20 Cal. 4th 163, 184-85 (1999). Although the *Cel-Tech* Court limited its holding to cases between competitors, this same analysis applies to cases brought by consumers under § 17200.

*Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001), makes this

point quite powerfully. In *Chavez*, the plaintiff challenged a manufacturer's efforts to provide dealers an incentive to keep resale prices high, another classic vertical restraint. The *Chavez* court recognized that the defendant's conduct was plainly permitted by the antitrust laws. *Id.* This, it held, also disposed of the § 17200 claim:

> If the same conduct is alleged to be both an antitrust violation and an "unfair" business act or practice for the same reason—because it unreasonably restrains competition and harms consumers—*the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' towards consumers.*

*Id.* (emphasis added). *See also RLH Indus., Inc. v. SBC Communications, Inc.*, 133 Cal. App. 4th 1277, 1286 (2005).

Plaintiffs' claim must be rejected for the same reason. eBay has done exactly what the antitrust laws exist to encourage. Over the past decade, it has built an electronic marketplace that enables people to buy and sell almost any good or service imaginable. Integrating payments into its marketplace, helped ignite what Plaintiffs in their complaint describe as the "virtuous cycle." (Compl. ¶ 25.) By making its marketplace more attractive to buyers, eBay attracted more buyers who attracted more sellers who, in turn, attracted even more buyers (and so on). (*Id.*) If Plaintiffs' claim, which plainly cannot succeed on antitrust grounds, could proceed under § 17200, it would "invite conflict and uncertainty and could lead to enjoining of procompetitive conduct." *Chavez*, 93 Cal. App. 4th at 375. The conduct alleged by Plaintiffs is not "unfair," and their § 17200 claim should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, eBay respectfully requests that this Court grant

///

///

///

EBAY'S NTC. OF MOTION AND MOTION TO DISMISS
CASE # C 07-01882 (JF)

1   eBay's motion to dismiss and dismiss Plaintiffs' complaint in its entirety for failure to

2   state a claim.

3

4   Dated:  June 8, 2007

5                                   MICHAEL F. TUBACH
                                    THOMAS P. BROWN
6                                   JULIE D. WOOD
                                    O'MELVENY & MYERS LLP

7

8                                   By: /s/Thomas P. Brown
                                         Thomas P. Brown
9                                   Attorneys for Defendant
                                    eBay Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28